The order of the district court will be affirmed.

**MELLON BANK (EAST) PSFS, N.A., a federally chartered banking association**

v.

**DiVERONICA BROS., INC., Appellant.**

No. 92–1244.

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1992.

Decided Jan. 15, 1993.

could be fired by her "client" at will, is frivolous. Moreover, the fact that Fitch was an attorney does not exclude her from the statutory rights of § 530(a). Nothing in that provision suggests an exemption for government employees who are lawyers. At all events, the GESC found as a fact that Fitch's job was more of a management position than that of a lawyer representing VIPA.

Equally without merit is VIPA's argument that, even if the GESC properly exercised jurisdiction, a new GESC legal hearing should be granted because the GESC legal advisor, Vincent F. Frazer, was at one time employed by VIPA at the request of Fitch and was therefore biased. At no time did Frazer act as a fact finder in the case. In the absence of any further evidence, Frazer's former employment by VIPA is insufficient to establish bias.

Frank J. Vavonese (argued), Syracuse, NY, for appellant.

Andrew D. Bershad (argued), Blank, Rome, Comisky & McCauley, Philadelphia, PA, for appellee.

Before: SLOVITER, Chief Judge, STAPLETON and LAY *, Circuit Judges.

* Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Defendant DiVeronica Bros., Inc. appeals from an order of the district court entering judgment for $78,889.13 in favor of plaintiff Mellon Bank (East) PSFS, N.A. on its breach of contract claim. DiVeronica contends that the district court erred in denying its motion to dismiss the complaint for lack of personal jurisdiction; in finding that its obligation was unconditional; and in finding it was not entitled to an offset. Because we find that DiVeronica had insufficient contacts with Pennsylvania to warrant the exercise of personal jurisdiction over it, we do not reach the other issues posed.

## I.

### Facts and Procedural History

On June 29, 1982, Girard Bank entered into a loan agreement with Hubbell Holding Corp. and its affiliated companies: O.W. Hubbell & Sons, Inc.; Hubbell Highway Signs, Inc.; Hubbell Electric, Inc.; Cable Guide Railing Construction Co., Inc.; Triboro Neon & Service Corp.; and Bundy Concrete Products, Inc. (referred to jointly as the Hubbell Companies unless otherwise noted). As collateral, the Hubbell Companies granted, *inter alia,* a continuing lien and security interest in their accounts receivable. The loan was cross-collateralized so that collateral from any one of the Hubbell Companies could be used by Girard Bank to discharge the debt of the others. App. at 531, 539. In the mid–1980s, Girard Bank was acquired by Mellon Bank (East) PSFS, N.A., a federally chartered banking association with its principal place of business in Pennsylvania.

In February 1990, the Hubbell Companies defaulted on their loan obligations. Mellon Bank first demanded payment, and then on March 23, 1990 took peaceful possession of the collateral, including the accounts receivable. When one of the compa-

nies, O.W. Hubbell & Sons, was brought into involuntary bankruptcy, later converted into a voluntary chapter 11 proceeding, Mellon Bank obtained permission from the bankruptcy court of the Northern District of New York to lift the automatic stay to continue to collect the accounts receivable.

Because defendant DiVeronica Bros., Inc. had operated as both a subcontractor to and a general contractor of some of the individual Hubbell Companies, resulting in a series of credits and debits between them, in May 1990, the Hubbell Companies and DiVeronica met to settle their accounts. The oral agreement they reached fixing the amounts of their debts was later confirmed in a letter from Mellon Bank to the president of DiVeronica (the Letter Agreement). The Letter Agreement stated that in total, DiVeronica owed the Hubbell Companies $86,877.13; that O.W. Hubbell & Sons (the company in bankruptcy) owed DiVeronica $86,788.71 for work completed; and that DiVeronica had applied for payment of that amount from the Reliance Insurance Company, a New York corporation, which had insured payment and performance by O.W. Hubbell & Sons on the construction project for which DiVeronica as subcontractor was owed the $86,788.71. It further stated that "Hubbell and Diveronica have agreed that upon receipt of $86,788.71 from Reliance Insurance Co., Diveronica will pay [an outstanding lien].... After the lien has been removed, Diveronica will pay Hubbell $86,877.13." At the meeting leading to this agreement, Robert Obernesser, the manager of the construction division of O.W. Hubbell & Sons, agreed to assist DiVeronica in asserting its claim on the Reliance bond.

Reliance apparently disclaimed on the surety bond, and there remain accounts outstanding to and from DiVeronica and several of the Hubbell Companies. As assignee of the receivables of the Hubbell Companies, Mellon Bank filed this diversity action in the Eastern District of Pennsylvania to recover the debts DiVeronica owed

three of the Hubbell Companies.[1] The district court denied DiVeronica's motion to dismiss for lack of personal jurisdiction.

At the bench trial that followed, DiVeronica contended that because O.W. Hubbell & Sons owed it some $8,000 more than DiVeronica owed the Hubbell Companies together, it was entitled to set off the debts and had no duty to pay. It further argued that receipt of the payment on the surety bond was a condition precedent to its obligation to pay the accounts due to the Hubbell Companies, and that therefore Mellon Bank could not collect as assignee. The district court rejected these contentions and entered judgment in the amount of $78,889.13 in favor of plaintiff Mellon Bank. DiVeronica filed a timely appeal, asserting lack of personal jurisdiction or, in the alternative, entry of judgment in favor of the defendant or a new trial based on errors of law and fact committed in the district court.

## II.

### Jurisdictional Facts

Because resolution of this appeal turns on the jurisdictional question, we proceed to consider separately those facts relevant to the exercise of personal jurisdiction over DiVeronica which were developed at the evidentiary hearing on this issue.

DiVeronica is a New York corporation with a single office in Canastota, New York. Its business is construction, primarily roads, bridges, and buildings. The highway construction contracts between the Hubbell Companies and DiVeronica were solicited, contracted, and completed within the State of New York, and were governed by the laws of that state.

DiVeronica has never performed a construction project outside the State of New York; it has never solicited any business nor advertised outside the State of New York. It has no office, mailing address, or property in Pennsylvania; it is not autho-

---

1. Although the Letter Agreement listed DiVeronica's debts to the Hubbell Companies as $86,877.13, Mellon Bank sought damages at trial in the amount of $78,889.13. This reflected DiVer-

onica's payment of approximately $8,000 to the Hubbell Companies after the Letter Agreement but before trial.

rized or licensed to do business in Pennsylvania; it has no agents in Pennsylvania; it has not paid any taxes in Pennsylvania; it has never shipped merchandise directly into or through Pennsylvania nor has it supplied services or items here. Finally, the work that DiVeronica performed for the Hubbell Companies that is the subject of its claim on the Reliance bond was performed in New York.

On appeal Mellon Bank seeks to sustain the district court's ruling denying the motion to dismiss by arguing that jurisdiction is appropriate over DiVeronica because it attempted to realize pecuniary benefit in Pennsylvania by depositing checks from O.W. Hubbell & Sons drawn on Hubbell's Mellon Bank account which is located in Philadelphia, by submitting a claim to Reliance in Pennsylvania in an effort to collect on the surety bond, and by executing a contract with Mellon Bank knowing that it is located in Philadelphia, Pennsylvania. We will consider the relevance of these facts in the context of the applicable law.

## III.

### Discussion

■ Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law, and this court's review is therefore plenary. *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir.1990).

■ A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. Fed.R.Civ.P. 4(e). The Pennsylvania long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons.Stat.Ann. § 5322(b) (Purdon 1981).

■ Where the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has "continuous and systematic" contacts with the forum state (general jurisdiction). *Bane v. Netlink, Inc.*, 925 F.2d 637, 639 (3d Cir.1991) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 416, 104 S.Ct. 1868, 1872, 1873, 80 L.Ed.2d 404 (1984)). Inasmuch as DiVeronica has conducted no solicitation, advertisement, construction, or delivery in Pennsylvania, there can be no assertion that DiVeronica had the continuous and substantial affiliation with the forum necessary for general jurisdiction. *See Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 541 (3d Cir.1985). Therefore, we assume that the district court found that there was specific jurisdiction over DiVeronica on the ground that Mellon Bank's cause of action arose from DiVeronica's contacts with Pennsylvania.

■ Specific jurisdiction exists only where the defendant has sufficient minimum contacts with the forum state that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The " 'constitutional touchstone' " is whether the defendant purposefully established those minimum contacts. *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir.) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)), *cert. denied*, 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990). A court must find that there was some act by which the defendant "purposefully avail[ed] itself" of the privilege of conducting activities within the forum. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). We consider in turn each of the acts alleged by Mellon Bank to support the assertion of personal jurisdiction over DiVeronica.

### A.

### The Checks

■ Mellon Bank claims that DiVeronica purposefully availed itself of the benefits of doing business in Pennsylvania by de-

positing checks drawn on O.W. Hubbell & Sons' Mellon Bank account. However, there is nothing to suggest that DiVeronica had any involvement in the selection by O.W. Hubbell & Sons of a Pennsylvania bank. The checks were cashed in New York and deposited in New York banks.

Under somewhat similar circumstances the Supreme Court rejected the plaintiff's contention that accepting checks drawn on a bank in the forum state was a basis for finding jurisdiction in that state. In *Hall,* the Court stated:

> There is no indication that [defendant] ever requested that the checks be drawn on a Texas bank or that there was any negotiation between [defendant and the payor] with respect to the location or identity of the bank on which checks would be drawn. Common sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer.

466 U.S. at 416–17, 104 S.Ct. at 1873 (footnote omitted). A similar analysis is appropriate here, particularly since Mellon Bank's claim does not arise out of the deposit by DiVeronica of checks drawn on Mellon Bank.

### B.

#### *The Bond*

■ Mellon Bank contends that DiVeronica's submission of a claim to Reliance Insurance Company in Pennsylvania in an effort to collect on the bond insuring payment and performance by O.W. Hubbell & Sons was an attempt to realize pecuniary benefits of Pennsylvania law. There are several reasons why this act does not constitute a sufficient basis on which to predicate specific jurisdiction. In the first place, the selection of Reliance as the bonding company was made by O.W. Hubbell & Sons, not DiVeronica. As the Supreme Court stated in *Hall,* "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient con-

tacts with a forum State to justify an assertion of jurisdiction." 466 U.S. at 417, 104 S.Ct. at 1873.

Thus, in *Hanson,* the Court held that Florida could not exercise in personam jurisdiction over a Delaware trust company merely because the settlor of the trust in question, which was originally established in Delaware, had moved to Florida where she exercised her residual power of appointment. The Supreme Court stated:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *International Shoe Co. v. Washington,* 326 U.S. 310, 319 [66 S.Ct. 154, 159, 90 L.Ed. 95]. The settlor's execution in Florida of her power of appointment cannot remedy the absence of such an act in this case.

357 U.S. at 253–54, 78 S.Ct. at 1239–40; *see also Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir.1982). Also, although the power of attorney accompanying the bond that Reliance provided to O.W. Hubbell & Sons was signed both in Albany, New York by counsel for Reliance and in Philadelphia, Pennsylvania by a vice-president of Reliance, DiVeronica was not involved in deciding where the power of attorney accompanying that bond was executed.

In the second place, DiVeronica sent its claim to Reliance's Pennsylvania office at the suggestion of Obernesser, Hubbell's employee who was also acting at the behest of Mellon Bank to assist it in marshaling assets and collecting collateral. App. at 601. Although the bond described the issuer as the "Reliance Insurance Company of New York" with its "principal office in the City of Fairport, New York," Obernesser gave DiVeronica the names and tele-

phone numbers of contacts at Reliance in Pennsylvania, App. at 219–20, and told DiVeronica that the claim under the performance bond with Reliance had to be filed in Pennsylvania. App. at 220–21. Thus, contrary to Mellon Bank's assertion that DiVeronica's act of filing its claim with Reliance in Pennsylvania shows purposeful availment of this state's protection, it shows only that Obernesser's offer of assistance and provision of Reliance contacts and phone numbers in Pennsylvania affected DiVeronica's choice of where to file.

By the same reasoning, DiVeronica's follow-up telephone calls to officers of and counsel for Reliance in Pennsylvania cannot suffice as a basis for jurisdiction over it. In *Reliance Steel Products Co.*, we held that telephone calls in which a Missouri defendant allegedly gave negligent legal advice to a Pennsylvania client, even combined with defendant's advertisement in a legal directory distributed in Pennsylvania and his action in billing the Pennsylvania plaintiff, constituted insufficient contacts by defendant with that state. 675 F.2d at 589. DiVeronica's calls of inquiry to Reliance's Pennsylvania office do not show the purposeful availment that can provide a basis for personal jurisdiction.

This is not to suggest that it is merely DiVeronica's physical absence from Pennsylvania which supports the conclusion that it had no contacts here. The Supreme Court has made clear that jurisdiction may constitutionally be asserted over a defendant who has never set foot in the forum state—so long as defendant "purposefully has directed his activities at forum residents." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985). In this case, DiVeronica is not only not physically present, but it has also never "purposefully directed" its activities to Pennsylvania.

Finally, we note that our conclusion that the mere presentation of a claim to a bonding company that posted surety for a contractor's payments does not support personal jurisdiction in the bonding company's state is in accord with the reasoning of the other appellate court to consider this issue.

See *Capital Dredge & Dock Corp. v. Midwest Dredging Co.*, 573 F.2d 377, 380 (6th Cir.1978).

### C.

### The Letter Agreement

▇ Mellon Bank argues that DiVeronica attempted to realize a benefit in Pennsylvania when it "executed a contract with Mellon Bank, knowing that Mellon Bank is located in Philadelphia." Appellant's Br. at 13. Mellon Bank is referring to the Letter Agreement of May 31, 1990 that fixed the debts between the Hubbell Companies and DiVeronica. At the outset, it is important to note that we see no support for Mellon Bank's denomination of the Letter Agreement as a contract between it and DiVeronica. The Agreement, written by Mellon Bank on its stationery, states:

> The purpose of this letter is to confirm in writing the verbal agreement you have reached with Bob Obenesser [sic] of O.W. Hubbell & Sons, Inc. relating to the outstanding indebtedness between Hubbell and Diveronica Bros.

App. at 347–48. It concludes:

> If the above accurately summarizes your agreement *with Hubbell,* please sign as indicated and return this letter to me at your earliest convenience.

App. at 347–48 (emphasis added). In the body of the Letter Agreement, DiVeronica merely acknowledged debts to the Hubbell Companies which had been assigned to Mellon Bank.

Even if the Letter Agreement could somehow be characterized as a contract between DiVeronica and Mellon Bank, it is important to review DiVeronica's role in the genesis of that document. DiVeronica was not a party to the original 1982 loan agreement between the Hubbell Companies and Girard Bank, and, of course, DiVeronica had no control over the Hubbell Companies' selection of the Pennsylvania based Girard Bank, Mellon Bank's predecessor, as their lender. Nor did DiVeronica have any involvement in the subsequent assignment of the accounts receivable to Mellon Bank.

Moreover, after the assignment, it was Mellon Bank that initiated the contacts from Pennsylvania to DiVeronica in New York. Mellon Bank sent a general notification letter on March 8, 1990 from its offices in Pennsylvania to DiVeronica in Canastota, New York, informing DiVeronica that the accounts receivable had been assigned. Thereafter, the oral negotiations leading to the execution of the Letter Agreement were initiated by Mellon Bank: in May of 1990, it asked Obernesser to compile a list of the outstanding debts between the Hubbell Companies and DiVeronica; Obernesser sent the document to an officer at Mellon Bank for review; and he then arranged a meeting with DiVeronica in New York.

After the meeting, which took place at DiVeronica's offices in New York on May 16, 1990, Daniel K. Clancy of Mellon Bank telephoned from Pennsylvania to DiVeronica in New York to work out the wording of the Letter Agreement. Thereafter, on May 31, 1990, Clancy sent the Letter Agreement from Mellon Bank's offices in Pennsylvania to DiVeronica in New York. Finally, counsel for Mellon Bank sent DiVeronica a letter on July 12, 1990 and another on November 12, 1990, requesting payment of the debts acknowledged in the Letter Agreement.

In connection with the Letter Agreement, the only "purposeful" action by DiVeronica (through its president) was signing and returning the Agreement to Mellon Bank in Pennsylvania, as requested. We do not believe this can be considered an act by DiVeronica directed at Pennsylvania to benefit from its laws. Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant, *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992), particularly where, as here, the out-of-state defendant executed the "contract" only at the behest of the resident.[2]

The facts in *Farino,* where we sustained personal jurisdiction over the non-resident defendants, stand in contraposition to those in the present case. Defendants were limited partners in Virginia partnerships developing real estate in Virginia who applied to Mellon Bank, a Pennsylvania based lender, for loans that they personally guaranteed. After the partnership defaulted, Mellon Bank filed suit on the guarantees.

We examined the defendants' contacts for purposeful availment in Pennsylvania, concluding that jurisdiction was proper because the defendants had " 'reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state.' " *Id.* at 1223 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). We found particularly compelling the fact that defendants had "purposely directed" their activities into Pennsylvania: they approached Mellon Bank; they chose to finance with Mellon Bank when they could have financed elsewhere; they provided Mellon Bank in Pennsylvania with sufficient documentation so that they would obtain the loans; they sent updated financial information to Mellon Bank; and they knew that payments were to be mailed to Mellon Bank in Pennsylvania. *Id.* at 1223. Even in view of all of these factors, we wrote that "this [was] a close case." *Id.*

In the case before us, Mellon Bank has shown no comparable deliberateness on the part of DiVeronica. DiVeronica merely confirmed to Mellon Bank, a party whom it did not deliberately seek out, its agreement with the Hubbell Companies. DiVeronica did not choose to deal with Mellon Bank; as noted, it had no involvement in the choice of Girard Bank as lender or in the subsequent assignment of the accounts receivable. In this case, "the only significant contact that exists between Pennsylvania and [the defendant] is the result of this lawsuit, not its cause." *Reliance Steel Products Co.,* 675 F.2d at 589. Under

---

2. The authority that Mellon Bank relied on in its argument before the district court, *Sunn Classic Pictures, Inc. v. Budco,* 481 F.Supp. 382 (E.D.Pa.1979), does not support the proposition

for which it was presented. In that case the third-party defendant who contested jurisdiction was held to have caused harm within the state by its action elsewhere.

these circumstances, we find that this is not a "close case."

None of DiVeronica's marginal activities in Pennsylvania justifies the exercise of specific jurisdiction over it. We therefore conclude that Mellon Bank has not shown that DiVeronica had even minimum contacts with Pennsylvania. It follows that maintenance of the suit would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted).

### IV.

#### *Conclusion*

For the foregoing reasons, we will reverse the order of the district court denying DiVeronica's motion to dismiss and remand for dismissal of the complaint.[3]

---

**3.** The district court may, in its discretion, transfer this case pursuant to 28 U.S.C. § 1631 if a motion to do so is seasonably filed.