## DiMARK MARKETING, INC.

### v.

## LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY d/b/a Blue Cross and Blue Shield of Louisiana.

### Civ. A. No. 95–CV–3161.

United States District Court, E.D. Pennsylvania.

Jan. 25, 1996.

Alan S. Gold and Steven M. Zelitch, Monaghan & Gold, P.C., Elkins Park, PA, for Plaintiff.

Jay H. Calvert, Jr. and Suzan DeBusk Paiva, Morgan, Lewis & Bockius, Philadelphia, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff DiMark Marketing, Inc. (DiMark) is a Pennsylvania corporation in the business of providing marketing and advertising services to other companies. Defendant Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana (Blue Cross) is a Louisiana corporation in the business of providing health insurance and self-funded administration for Louisiana-based companies and individuals. In 1991, DiMark first entered into a contract with Blue Cross to provide market research regarding potential target customers for Blue Cross in Louisiana and to then solicit those potential customers. In April, 1994, Blue Cross and DiMark entered into the contract (the 1994 Agreement) that is at issue in this lawsuit.[1]

---

1. Blue Cross apparently refuses to make payments due under the 1994 Agreement because of a dispute over who should pay the taxes that accrued under the earlier contracts. At this point of the litigation, we are concerned only with the cause of action raised in the complaint and not with Blue Cross's affirmative defenses.

This Memorandum addresses Blue Cross's motion to dismiss the complaint against it for lack of personal jurisdiction, to dismiss the complaint for improper venue or in the alternative, to transfer the action to the United States District Court for the Middle District of Louisiana.

## PERSONAL JURISDICTION

■ If challenged, the burden is on plaintiff to prove personal jurisdiction. *Grand Entertainment Group v. Star Media Sales,* 988 F.2d 476, 482 (3d Cir.1993). Prior to trial, a plaintiff need only make a prima facie showing of jurisdiction and courts must take the plaintiff's facts as true for the purposes of the analysis. *Mellon Bank PSFS Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992); *National Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 647 (S.D.N.Y. 1994).

■ Federal courts have personal jurisdiction over non-resident defendants to the extent permitted in the state in which the federal court sits. Fed.R.Civ.P. 4(e). Therefore, our first step is to examine Pennsylvania law. Relevant to this action, Pennsylvania's long-arm statute provides specific personal jurisdiction[2] over a person for causes of action arising from that person "transacting any business in this Commonwealth," or "causing harm or tortious injury by an act or omission in [and outside] this Commonwealth." 42 Pa.Cons.Stat.Ann. § 5322(a)(1), (3) & (4) (1981 & Supp.1995). In addition, Pennsylvania's jurisdiction extends to the "fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Id.* at § 5322(b).

The United States Supreme Court, in turn, has defined the due process limit of Constitutionally permitted non-resident jurisdiction in a series of decisions including *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). It has held that jurisdiction is proper when:

> the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there.

*Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84.

■ Accordingly, there must be some affirmative act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). These acts must be "such that [the defendant] should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

■ The Third Circuit has repeatedly held that courts should take a "highly realistic" view when deciding whether to assert personal jurisdiction over a non-resident defendant. *Mellon Bank,* 960 F.2d at 1224; *Grand Entertainment,* 988 F.2d at 482. Courts should take into account "the relationship among the forum, the defendant and the litigation," and accordingly, "prior negotiations and contemplated future consequences, along with the terms of the contract" should be considered. *Mellon Bank,* 960 F.2d at 1221, 1224 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977)).

■ Although each situation must be considered on its own facts, guidance may be taken from decisions in other lawsuits. For

---

2. Pennsylvania also grants general jurisdiction if the non-resident defendant has "maintained 'continuous and substantial' forum affiliations." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982). General jurisdiction is used when the cause of action is unrelated to the contacts with the forum state. *Dollar Savings Bank v. First Sec. Bank,* 746 F.2d 208, 211 (3d Cir.1984). DiMark also asserts general jurisdiction over Blue Cross.

example, courts have found specific jurisdiction when non-resident defendants negotiate the contract that gives rise to the cause of action in the forum state. *See e.g. Carteret Savings Bank v. Shushan,* 954 F.2d 141, 147–48 (3d Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992) (specific jurisdiction found when cause of action was misrepresentations made at in-forum meeting); *National Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 647 (S.D.N.Y.1994) (single in-state meeting was sufficient to grant specific jurisdiction over non-resident defendant when the meeting was "essential to formation of the contract at the heart of this action"); *Western Union Telegraph Co. v. T.S.I., Ltd.,* 545 F.Supp. 329, 335 (D.N.J.1982) ("importance of visits to the forum state to negotiate a contract underlying the suit has been recognized by many other courts as well" and citing cases). Specific jurisdiction can also be based on mail and telephone communications directed to the forum. *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 701 (3d Cir. 1990).

■ It is always necessary, however, that the defendant's contacts be purposeful and voluntary and that they give rise to the cause of action. So, in *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.,* 5 F.3d 28 (3d Cir. 1993), the Third Circuit held that several post-formation telephone communications with the forum could not be the basis for jurisdiction when those communications were not the basis for the cause of action. *Id.* at 33. Further, the Court held that the mere fact that the non-resident defendant had entered into a contract with a forum resident was insufficient to show purposeful availment of the forum. *Id.* As a result, it found no specific jurisdiction in the proposed forum. *See also Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 (3d Cir. 1984) (non-resident defendant had several contacts with forum, but because none of them gave rise to the cause of action, no

specific jurisdiction); *Romann v. Geissenberger Mfg. Corp.,* 865 F.Supp. 255, 263 (E.D.Pa. 1994) (same).

■ In light of the above, we turn now to DiMark's complaint and the evidence presented to us by the parties. Blue Cross presents evidence that it has virtually no ties with Pennsylvania. It demonstrates that it is not incorporated in Pennsylvania, is not authorized, licensed or registered to do business in Pennsylvania nor has any employees in Pennsylvania. Blue Cross does not solicit customers or advertise in Pennsylvania and has no telephone, mail box, mailing address or property in Pennsylvania. Only .075% of its 280,000 customers have a mailing address in Pennsylvania. Blue Cross also contends that it executed the allegedly breached 1994 Agreement in Louisiana, that the 1994 Agreement was aimed solely at Louisiana residents and that it included a Louisiana choice of law provision.

Blue Cross attests that any contacts it may have with Pennsylvania are either random and fortuitous or are unilateral acts of DiMark that do not constitute affirmative acts of Blue Cross. Further, it contends that phone calls and mail directed at a forum are insufficient to be minimum contacts under the due process clause. Finally, Blue Cross attempts to distinguish DiMark's caselaw because it involves situations where the tort arose directly out of the contact with the forum, such as claims that material misrepresentations were made during an in-state meeting. *Distinguishing Carteret,* 954 F.2d 141; *Grand Entertainment,* 988 F.2d 476.

In response, DiMark's evidence is that the "meat" of the 1994 Agreement, the Marketing and Retention Plan (Marketing Plan) referred to in section 1.1 of the 1994 Agreement, was negotiated at a two-day meeting in Pennsylvania after Blue Cross sent five of its employees to meet with DiMark personnel and tour DiMark's facilities.[3] According to

---

**3.** There is some dispute over what exactly was discussed at this meeting. Blue Cross presents evidence that no substantive term in the 1994 Agreement was discussed at this meeting, and that therefore, the cause of action for breach of contract does not arise out of a contact with the forum. DiMark agrees that the 1994 Agreement itself was not discussed because it, like the contracts preceding it, was simply a boiler plate agreement that incorporated into it the substance of the 1994 Marketing Plan. Because the Marketing Plan was the agreement that established the duties and obligations of the signatories and because this document was negotiated in Penn-

DiMark, the Marketing Plan forms "virtually the entire basis for determining the performance obligations of DiMark and the payment obligations of Blue Cross in connection with the 1994 Agreement." Verification of Barbara Dougherty. DiMark contends that this in-state negotiation is sufficient to vest specific jurisdiction because the cause of action arises out of the negotiations that were conducted here.

Also according to DiMark, the 1994 meeting was the fifth such trip to Pennsylvania by Blue Cross employees, the first four taking place during the term of earlier contracts. In addition, DiMark's evidence is that between four to five telephone calls per month were made between DiMark and Blue Cross during the term of the 1994 Agreement and that almost half of those calls were made by Blue Cross into Pennsylvania. Further, Blue Cross sent checks to DiMark in Pennsylvania and the 1994 Agreement was executed by DiMark in Pennsylvania. Finally, DiMark contends that the 1994 Agreement was almost wholly performed in Pennsylvania, that Blue Cross knew that DiMark operated in Pennsylvania and that DiMark's previous work for Blue Cross had been largely performed in Pennsylvania.

After due consideration of the wealth of caselaw cited to us by the parties as well as our own research, we conclude that DiMark has shown a prima facie case of specific personal jurisdiction. In Pennsylvania, a non-resident defendant is subject to suit if the cause of action arises out of conduct such as transacting any business in-State. Most important to our analysis is the 1994 meeting at DiMark's offices to negotiate the Marketing Plan. Least important is the fact that DiMark performed its share of the contract in Pennsylvania, because those were unilateral acts of the plaintiff, an independent contractor, and the contract did not call for or require performance in any particular state. *Colmen Fin. Servs. v. Charter Equip. Leasing Corp.*, 708 F.Supp. 664, 667 (E.D.Pa. 1989).

The meeting in Pennsylvania resulted in the core of the 1994 Agreement, which is the basis of this lawsuit. This, coupled with evidence that DiMark executed the 1994 Agreement in Pennsylvania, that Blue Cross knew that DiMark was a Pennsylvania corporation and would largely perform its duties in Pennsylvania, that Blue Cross entered into a series of contracts with DiMark and sent its employees to Pennsylvania to meet with DiMark employees on five separate occasions and that it directed numerous communications and payments to Pennsylvania, indicate to us that Blue Cross took affirmative acts to establish continuous obligations with a Pennsylvania company. These contacts were such that Blue Cross should have reasonably anticipated being haled into court here.

These affirmative contacts also serve to distinguish this case from *World–Wide Volkswagen* and the defendant's truly arbitrary contact with the purported forum state. 444 U.S. at 295, 100 S.Ct. at 566. Instead, we find that this case is similar to *Mellon Bank*, where our court had specific jurisdiction over the defendants who borrowed money from a Pennsylvania bank and sent all payments and other correspondence to Pennsylvania. The Court held that these facts demonstrated that the defendants:

> "purposely directed" their activities toward a Pennsylvania resident and thereby availed themselves of the opportunity to do business there within the meaning of *Burger King.*
>
> In addition, by asking Mellon to lend money and offering to guaranty that debt, the defendants deliberately "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state."

960 F.2d at 1223 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). Like the defendants in *Mellon Bank*, DiMark has made a prima facie case that Blue Cross did take voluntary acts toward this forum that have now served to create specific jurisdiction.

sylvania, DiMark contends that the cause of action arises out of a forum contact. For the purposes of this motion, we must take DiMark's

allegations as true and therefore, consider the essential part of the contract to have been negotiated in Pennsylvania.

■ Finally, we ask whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160). We use the "fairness factors" in *World–Wide Volkswagen*, including "the burden of the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the inter-state judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85.

■ Once the plaintiff has made a prima facie case of jurisdiction, the defendant must show that an exercise of jurisdiction is unconstitutional. *Mellon Bank*, 960 F.2d at 1226. Beyond the issues raised above, Blue Cross has not presented any evidence why exercise of personal jurisdiction over it in this district would be unconstitutional. Because of this, and because we do not see any unconstitutionality ourselves, we find that due process is met by exercise of jurisdiction in this district.[4]

## VENUE

■ Next, Blue Cross argues that venue does not lie in this district under 28 U.S.C. § 1391(a). That section provides venue in a judicial district in which (1) any defendant resides, if all defendants reside in the same State, (2) a substantial part of the events or omissions giving rise to the claim occurred or (3) the defendants are subject to personal jurisdiction if there is no district in which the action may otherwise be brought. Section 1391(c) further provides that for the purposes of venue, a "defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

Because, for the purposes of this motion, we found above that Blue Cross is subject to specific personal jurisdiction in this District, we likewise find that for the purposes of venue, Blue Cross is considered to reside here as well, and that therefore, venue is properly laid here.[5] *Peregrine Corp. v. Peregrine Indus. Inc.*, 769 F.Supp. 169, 172–73 (E.D.Pa.1991).

## TRANSFER

■ Finally, Blue Cross maintains that in the interest of justice, the case should be transferred to the Middle District of Louisiana, where it could have been brought. 28 U.S.C. § 1404(a). Courts consider the following factors when making this determination: (1) the relative ease of access to sources of proof, (2) availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining willing witnesses, (3) the possibility of a view of the premises and (4) all other practical problems that make a trial of any case easy, expeditious and inexpensive. *Gulf Oil v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

■ Courts further consider the following public interest factors: (1) the administrative difficulties resulting from court congestion, (2) the local interest in having controversies decided at home, (3) the interest in having the trial of a diversity case decided in a forum that is familiar with the governing law, (4) the avoidance of unnecessary problems in conflicts of law or application of foreign laws and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981). There is a strong presumption in favor of the plaintiff's choice of forum when that forum is the plaintiff's home. *Id.* at 240, 102 S.Ct. at 258.

In support of its request to transfer, Blue Cross asserts that every non-DiMark-employee witness resides in Louisiana and that many witnesses would not be subject to compulsory process in this district. It provides a brief list of its proposed witnesses and the

---

4. Because we find that personal jurisdiction is proper here, Blue Cross's argument under 28 U.S.C. § 1631 becomes moot.

5. Because we find that venue is properly laid here, Blue Cross's argument under 28 U.S.C. § 1406(a) becomes moot.

basic topic on which each would be called. Further, Blue Cross contends that it would be very inconvenient and expensive for all these witnesses to travel to this district. Finally, it argues that because Louisiana law will be applied and because the 1994 Agreement centered on performance in Louisiana, that Louisiana has the most significant relationship to the litigation.

In turn, DiMark contends that Blue Cross has not met the heavy burden it has of persuading this Court to transfer the case. It argues that there is no need for the Louisiana tax authorities to testify at this trial because who Louisiana designates as the tax debtor does not answer who DiMark and Blue Cross agreed would pay the tax. Further, DiMark presents its own list of witnesses and their proposed testimony. The proposed witnesses all reside in Pennsylvania. In addition, DiMark contends that Pennsylvania has a significant interest in rectifying a wrong, here the breach of a contract, done to one of its citizens. Finally, DiMark contends that Pennsylvania law applies to the tax dispute.

At the most, DiMark proposes, this Court faces an "equitable standoff," a situation in which one party will be inconvenienced no matter which forum is selected. In that situation, DiMark contends the appropriate course is to give substantial weight to its choice and therefore, deny Blue Cross's § 1404(a) request. *Lieb v. American Pac. Int'l, Inc.*, 489 F.Supp. 690, 697 (E.D.Pa. 1980); *Aquarium Pharms., Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441, 446 (E.D.Pa.1973).

We turn now to our consideration of the relevant factors. Preliminarily, we agree with DiMark that many of the factors weigh equally on each side. For example, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining willing witnesses and all other practical problems that make a trial of any case easy, expeditious and inexpensive. This case is largely one of contract interpretation. For that reason, the essential witnesses will most likely be the contract negotiators and the documents will be the 1994 Agreement itself and its supporting documents. It is apparent from the parties' submissions that these areas of proof are found equally in Louisiana and Pennsylvania. Blue Cross has failed to particularly identify any witnesses or documents that it cannot bring or will be greatly inconvenienced by bringing to Pennsylvania.

Further, this case appears to be a fairly straightforward diversity contract case, and therefore the administrative difficulties are not likely to overwhelm this Court's resources. In addition, the party harmed by the alleged breach is a Pennsylvania resident, which gives Pennsylvania citizens an interest in having this controversy decided at home, and alleviates the concern of burdening citizens of an unrelated forum with jury duty.

Finally, it appears that there is a dispute over which law, Pennsylvania's or Louisiana's, will apply to this action so that whichever forum addresses the case will have to resolve the issue. Also, at this point, it appears equally likely that Pennsylvania's law will ultimately be applied as Louisiana's will. We note that no party has indicated that Pennsylvania and Louisiana law differ on any relevant issues.

For all these reasons, we conclude that Blue Cross has not demonstrated that justice calls for a transfer of this action to Louisiana. For this reason, we deny the request. We do so, however, without prejudice, so that if during the course of the litigation it appears that Louisiana is a more appropriate forum, we may reconsider the question.

An appropriate Order follows.

### ORDER

AND NOW, this 25th day of January, 1996, upon consideration of the Motion of Defendant Louisiana Health Service and Indemnity Company to Dismiss for Lack of Personal Jurisdiction, to Dismiss for Lack of Proper Venue, or in the alternative, to Transfer to the United States District Court for the Middle District of Louisiana and responses thereto, the Motion is hereby DENIED

without PREJUDICE in accordance with the attached Memorandum.