Paul **WAIMBERG**, Plaintiff,

v.

**MEDICAL TRANSPORTATION OF AMERICA, INC., et al.,** Defendants.

**Civil Action No. 99–1723.**

United States District Court, E.D. Pennsylvania.

June 25, 1999.

Hillel Lewis, Pomerantz, Lewis & Associates, Philadelphia, PA, for Plaintiff.

Brian D. Sieve, Donna Welch, Kirkland & Ellis, Chicago, IL, Constantine T. Fournaris, Buchanan Ingersoll, Philadelphia, PA, for Defendants.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

The three defendants in this breach of contract action move for dismissal based on lack of personal jurisdiction. Defendant Medical Transportation of America, Inc. also moves for dismissal for failure to state a claim upon which relief can be granted. Because plaintiff has met his burden of establishing the minimum contacts necessary for the court to exercise jurisdiction and because there are factual issues pertaining to the nature of the contract, all of the defendants' motions to dismiss will be denied.

*Background* [1]

Plaintiff Paul Waimberg, a citizen of Pennsylvania, brings claims for breach of contract and tortious interference of contract pursuant to the court's diversity jurisdiction. Defendant MTA is incorporated under the laws of Nevada and has its principal place of business in Nevada. Defendant Golder, Thomas, Cressey, Rauner Inc. (GTCR) is incorporated in Illinois and has its principal place of business in Illinois. Finally, defendant Joseph Nolan is a citizen of Illinois and is the principal owner of GTCR. GTCR itself is not an investor in MTA; however, its affiliate GTCR Golder Rauner, LLC is the indirect general partner of an equity fund that invested in

1. These background facts are taken from plaintiff's submissions.

MTA, and at least one principal of GTCR was directly involved in the negotiations at issue in this case.

Waimberg was contacted in Pennsylvania in December 1997 by the Weiss Group, LLC, a headhunting firm, that asked whether Waimberg was interested in a position as CFO of a company being started by one of Weiss' clients. This new company was being formed to roll-up/consolidate local medical transportation companies across the United States and would eventually become MTA. Following this contact, Waimberg flew to San Diego on January 23, 1998, and met with Fir Geenen, the chair of the new company. He then interviewed with Robert Forbuss, the CEO of the new company. On February 19, 1998, Waimberg flew to Las Vegas and met with Forbuss and John Wilson, the vice-president of operations. At this time, Waimberg was told that the CFO position would require relocation to Las Vegas. On March 2, 1998, in a telephone call to Pennsylvania, Weiss, authorized on behalf of the new company, offered Waimberg the position of CFO. Plaintiff orally accepted the offer on March 10 while conversing with Forbuss and Weiss in a telephone call to Pennsylvania; and, on March 13, 1998, he accepted the written offer that was faxed to him in Pennsylvania. On the same day, he resigned from his then current job. However, following meetings with Joseph Nolan and Vincent Hemmer, who was an associate of GTCR and the director of MTA, the plaintiff was told on March 23, 1998, that MTA would not honor his contract because GTCR questioned his ability to do the job.

Plaintiff now sues MTA and GTCR for breach of contract and GTCR and Nolan for tortious interference with contract. All defendants challenge personal jurisdiction, alleging that none of them have established minimal contacts in Pennsylvania such that they can be sued in the courts of this state. MTA also argues that, even if jurisdiction exists, the plaintiff has failed to state a claim upon which relief can be granted.

*Discussion*

■ When a court sitting in diversity is faced with a challenge to personal jurisdiction by out-of-state defendants, it "must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). The Pennsylvania long-arm statute permits jurisdiction to be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *see also Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 481 (3d Cir.1993) (describing Pennsylvania long-arm statute).

■ As the defendants have raised jurisdictional defenses, the plaintiff "bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 554 (3d Cir.1993) (citations omitted); *see also Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir.1992) (noting that burden is by a preponderance of evidence). The plaintiff may meet this burden and present a prima facie case for exercising personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992) (citations omitted); *see also DiMark Marketing, Inc. v. Louisiana Health Service & Indem. Co.*, 913 F.Supp. 402, 405 (E.D.Pa.1996) (plaintiff must only make prima facie showing and court must resolve factual doubts in favor of plaintiff).

In this case, plaintiff alleges that this court has specific jurisdiction over the three defendants.[2] The Third Circuit has explained that a two-part test should be applied when specific jurisdiction is alleged. First, the plaintiff must show that the defendant had constitutionally sufficient minimum contacts with the forum. *See IMO,* 155 F.3d at 259. These contacts must be such that the defendant should "reasonably anticipate being haled into court there." *DiVeronica Bros.,* 983 F.2d at 554 (internal punctuation omitted), *quoting World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *see also Farino,* 960 F.2d at 1221 (stressing need to inquire as to the relationship among the forum, the defendant, and the litigation). Moreover, the court should examine whether the defendant "purposefully established those minimum contacts.... A court must find that there was some act by which the defendant 'purposefully avail[ed] itself' of the privilege of conducting activities within the forum." *DiVeronica Bros.,* 983 F.2d at 554 (citations omitted). Second, the court must determine, in its discretion, that exercising jurisdiction would "comport with 'traditional notions of fair play and substantial justice.'" *IMO,* 155 F.3d at 259, *citing International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (other citations omitted).[3]

In analyzing whether such minimum contacts have occurred to meet the first part of the test, the court must engage in a factual examination of the contacts in question, and, while similar cases may be helpful to the court, "the minimum contacts test ... is not susceptible of mechanical application." *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (citations, internal punctuation omitted); *see also Farino,* 960 F.2d at 1224–25 (stressing need for individualized inquiry in each case).

Merely contracting with a resident of the forum state does not necessarily establish the minimum contacts required to exercise personal jurisdiction. *See, e.g., Grand Entertainment Group,* 988 F.2d at 482; *DiVeronica Bros.,* 983 F.2d at 557; *Farino,* 960 F.2d at 1223. "The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Farino,* 960 F.2d at 1223; *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting same). A single contact may be sufficient to subject a party to personal jurisdiction, particularly if the "contacts evaluated are those that give rise to the litigation." *Grand Entertainment Group,* 988 F.2d at 483. Mail and telephone contacts may count towards the minimum contacts with a forum. *See id.* Accordingly, a defendant need not physically enter a forum to be subject to its jurisdiction. *See, e.g., Burger King,* 471 U.S. at 476, 105 S.Ct. 2174.

The corporate defendants, MTA and GTCR, argue that this court has no specific personal jurisdiction over them. Plaintiff, however, points out that the Weiss Group, LLC, contacted him with respect to the CFO position at the behest of MTA and its investor's parent, GTCR. Plaintiff states that on March 10, 1998, he received a faxed letter from GTCR signed by Nolan confirming GTCR's investment in MTA. He received numerous phone calls pertaining to the offer of a job at MTA, and he

---

**2.** Plaintiff alleges general jurisdiction over GTCR but suggests that there is not yet enough information to demonstrate this fact and requests discovery. As the court rules that specific jurisdiction exists, there is not need to reach this question.

**3.** The Third Circuit explained recently that while this "latter standard need only be applied at a court's discretion, we have generally chosen to engage in this second tier of analysis in determining questions of personal jurisdiction." *Pennzoil Products Co. v. Colelli & Associates,* 149 F.3d 197, 201 (3d Cir.1998).

received a faxed and mailed offer letter in Pennsylvania. Waimberg orally accepted the job offer in Pennsylvania and signed the offer letter in Pennsylvania, thus making it the place in which the contract was formed. He also received numerous phone calls following the decision to rescind the job offer. *See* Aff. of Waimberg (detailing numerous contacts). He agrees, obviously, that no representative of MTA or GTCR personally visited him in Pennsylvania but stresses that the contract was negotiated and finalized in Pennsylvania and that this qualifies as sufficient minimal contacts. Also, with respect to GTCR and Nolan, Waimberg stresses that they are alleged to have committed intentional torts the harm of which was directed towards Pennsylvania.

 In this case, the corporate defendants' actions confer personal jurisdiction because of the significance of their actions in Pennsylvania. Admittedly, several of the most important meetings between the parties occurred in California, Illinois, and Nevada, and the contract was to be performed in Nevada. However, the present litigation stems directly from the offer letter that was faxed to the plaintiff in Pennsylvania, discussed by telephone in Pennsylvania, and ultimately signed and accepted by the plaintiff in Pennsylvania. As the Supreme Court noted, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 473, 105 S.Ct. 2174 (internal punctuation, cita-

tions omitted). This is particularly true given that the present lawsuit pertains directly to the contacts discussed by the plaintiff. *See Grand Entertainment Group*, 988 F.2d at 483 (stating that a defendant who "voluntarily decided to negotiate" with the plaintiff "cannot now be heard to complain about answering a suit concerning the effect of negotiations in the jurisdiction in which some of those negotiations occurred"). Applying the "highly realistic" approach directed by the Third Circuit, *see Farino*, 960 F.2d at 1224, it cannot be said that the defendants have been unexpectedly haled into a Pennsylvania court. The plaintiff was contacted in Pennsylvania at the behest of GTCR and MTA; he received transmissions in Pennsylvania assuring him of GTCR's involvement in the project; the offer letter was faxed to him and signed by him in Pennsylvania.

 This holding applies to both MTA and GTCR. MTA and GTCR, through the Weiss Group, contacted Waimberg in order to interview him for the position of CFO. GTCR faxed letters signed by Nolan to Waimberg reassuring him that GTCR would provide financial backing to the new venture. MTA representatives spoke with Waimberg several times in Pennsylvania regarding the terms of the offer and faxed him the offer in Pennsylvania, which Waimberg then signed in Pennsylvania. In short, none of these defendants can truly suggest that they could not anticipate that they might be called to answer in a Pennsylvania court for the agreement they had entered with a Pennsylvania citizen.[4]

4. The court also agrees that the intentional tort alleged to have been committed by Nolan and GTCR successfully elevates the contacts described and reinforces the court's decision that specific jurisdiction over these two defendants exists. "Generally speaking, under *Calder* [*v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984),] an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO*, 155 F.3d at 260. The Third Circuit has explained that the plaintiff must show the following factors under the *Calder* "effects test" to permit personal jurisdiction: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed [the] tortious conduct at the forum such that the forum can be

Nolan's motion to dismiss for lack of personal jurisdiction must also be denied at this stage. Defendant correctly points out that, in most cases, "individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts." *Elbeco, Inc. v. Estrella de Plato Corp.,* 989 F.Supp. 669, 676 (E.D.Pa. 1997). However, there is at least one exception which states that a corporate agent may be held personally liable for torts committed in her or his corporate capacity. *See id.* (holding that personal jurisdiction existed over individual defendants because corporate defendants purposefully reached into forum and made a series of misrepresentations). Nolan is alleged to have engaged in tortious behavior by acting personally and purposefully to convince MTA to rescind its offer to Waimberg. Given that the court must resolve factual disputes in favor of the plaintiff, the court will deny the motion to dismiss at this stage.

Having found that sufficient minimal contacts exist, the court will turn to the question of whether the contacts comport with notions of substantial justice. "Once the plaintiff has made a prima facie case of jurisdiction, the defendant must show that an exercise of jurisdiction is unconstitutional." *DiMark Marketing, Inc.,* 913 F.Supp. at 408, *citing Farino,* 960 F.2d at 1226; *see also Carteret Savings Bank,* 954 F.2d at 150. The defendants have not made any suggestion that jurisdiction would violate substantial justice, having rested solely on allegations that there are no minimum contacts. Because of this, and seeing no independent basis by which an exercise of jurisdiction would be unconstitutional or unjust, the court finds that due process is not violated by exercising jurisdiction in this district. *See Farino,* 960 F.2d at 1226–27 (declining to examine question of substantial justice when defendant did not raise the issue).

*Failure to State a Claim upon which Relief can be Granted* [5]

It would be premature to dismiss plaintiff's contractual claims at this early stage in the litigation. Even assuming that MTA correctly analyzes the law pertaining to the offer letter at issue, plaintiff could prove facts that would remove the presumption that his employment was at-will. *See, e.g., Martin v. Safeguard Scientifics, Inc.,* 17 F.Supp.2d 357, 368–69 (E.D.Pa. 1998) (discussing exceptions to the at-will doctrine).

*Conclusion*

Given that defendants contacted the plaintiff to offer him a position, negotiated with him by telephone and fax in Pennsyl-

---

[5]. A motion to dismiss pursuant to Rule 12(b)(6) should be granted when there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In evaluating a motion to dismiss for failure to state a claim, the court must determine whether "under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief" and the court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). The court should not inquire as to whether the plaintiff would ultimately prevail but only whether it is entitled to offer evidence to support its claims. *See Nami,* 82 F.3d at 65. A motion to dismiss should be granted only if the "plaintiffs could prove no set of facts that would entitle them to relief." *Id.; see also Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990).

said to be the focal point of the tortious activity." *IMO,* 155 F.3d at 265–66. To meet the third prong, the plaintiff must show that the defendant "knew that the plaintiff would suffer the brunt of the harm ... in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266. In this case, an intentional tort is alleged and its effect were felt primarily by Waimberg in Pennsylvania, thus meeting the first two prongs of the test. The third prong is also met. GTCR's actions were aimed at a known resident of Pennsylvania to whom it sent letters and made phone calls. Assuming that plaintiff's allegations are true, when GTCR convinced MTA not to hire Waimberg, it acted knowing and intending that the brunt of its actions would be felt primarily in Pennsylvania rather than another forum.

vania, and that the signed offer letter was faxed to and executed in Pennsylvania, defendants should have reasonably anticipated being haled into a Pennsylvania court to defend themselves. Consequently, the court will deny the motion to dismiss for lack of personal jurisdiction. The alternative ground for dismissal, failure to state a claim on which relief may be granted, will also be denied because plaintiff could show facts that would entitle him to relief.

An appropriate Order follows.

### ORDER

**AND NOW**, this day of June, 1999, upon consideration of Defendant Medical Transportation of America, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim upon which Relief can be Granted; Defendants Golder, Thomas, Cressey, Rauner, Inc. and Joseph P. Nolan's Motion to Dismiss for Lack of Personal Jurisdiction; and the responses thereto, it is hereby **ORDERED** that the Motions are **DENIED**.