NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0429-23

ALLURE PET PRODUCTS,
LLC,

    Plaintiff-Respondent,

v.

DONNELLY MARKETING &
DEVELOPMENT LLC, d/b/a
CONCORD EXPO GROUP, and
KATHY LYNN KAZMAIER
DONNELLY, individually,

    Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 17, 2024**
>
> **APPELLATE DIVISION**

Argued January 8, 2024 – Decided January 17, 2024

Before Judges Sabatino, Mawla, and Marczyk.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1281-21.

Joshua Matthew Lurie argued the cause for appellants (Lurie Strupinksy, LLP, attorneys; Joshua Matthew Lurie, on the brief).

Joseph M. Morgese argued the cause for respondent (Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys; Joseph M. Morgese, of counsel and on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This interlocutory appeal solely concerns an issue of personal jurisdiction. The issue is whether our state court has personal jurisdiction over a defendant Utah company and its owner who entered into a contract to reserve exhibition space for plaintiff, a New Jersey pet product supplier, at a biannual trade show in Germany planned for 2020. The trade show was eventually postponed because of the COVID-19 pandemic, and the company and its owner declined to refund plaintiff's payment or apply it to the next show in 2022.

Defendants argue they lacked the required "minimum contacts" to be sued in New Jersey, stressing that plaintiff originally initiated the parties' relationship in 2011 by asking defendants to arrange for space at an earlier trade show in 2012. They further contend it would offend constitutional principles of fair play and substantial justice to compel them to litigate this civil case in this state so distant from Utah.

For the reasons that follow, we affirm the trial court's finding of personal jurisdiction under these circumstances. As a matter of law, it is not dispositive that the New Jersey plaintiff originally initiated contact with the Utah company and its owner years before the present transaction. The record shows

the Utah defendants sought and procured renewal contracts with plaintiff for the next four biannual trade shows, including 2020. In addition, the Utah defendants repeatedly solicited new or renewal business from at least ten other New Jersey pet companies during that time frame. Given that conduct, the Utah defendants "purposely availed" themselves of doing business with New Jersey customers to a level sufficient to satisfy the criteria for in personam jurisdiction under the Due Process Clause. The norms of fair play and substantial justice are not offended here.

I.

We derive the pertinent facts, as did the motion judge, from the jurisdictional discovery exchanged between the parties.

Plaintiff Allure Pet Products, LLC ("Allure") is a wholesale and consumer pet product supplier based in Denville, New Jersey. Allure is co-owned by two New Jersey residents. In this lawsuit, Allure seeks recovery of $14,256.80 it paid to defendant Donnelly Marketing & Development LLC (d/b/a "Concord"), a Utah company, for services it claims it did not receive.

Concord's sole member and owner is co-defendant Kathy Lynn Kazmaier Donnelly. Her father had previously founded the company in or about 2003 or 2004, and she took over the business after he passed away in 2013. Donnelly operates the business from Utah.

3

As described in Donnelly's deposition testimony, Concord organizes a variety of international trade shows. Among other things, Concord arranges for exhibitors to have booths to display their products and services at the trade shows. Concord's "turnkey package" includes assistance with marketing and promotion within the trade show, hotel accommodations, translators, on-site cleaning, security, and lounges with food and drink.

One of those trade shows is "Interzoo," in which vendors of pet products and services from around the world participate. The Interzoo show is customarily held biannually. Apparently, the only means for an exhibitor to obtain space within the United States Pavilion at the show, other than through Concord, is to share a booth with another exhibitor or to make arrangements directly with Interzoo.

The parties' relationship began in September 2011 when Robert Flynn, a co-owner of Allure, telephoned Donnelly and asked whether Allure could obtain a booth at the upcoming Interzoo show planned for 2012. Donnelly responded to Flynn through an email and offered her company's services. She then contacted the Interzoo project team to arrange space for Allure at the 2012 show. That initial transaction went forward, with Allure paying Concord for its services.

A-0429-23

In or about early 2013, Donnelly sent all of its 2012 Interzoo exhibitors, including Allure, what she described as a "special offer" to renew their space for the next Interzoo show in 2014. The offer extended to past customers the same space and services at the same rates. Allure took advantage of Concord's renewal offer and, in fact, increased its amount of reserved space for the 2014 show.

The same pattern repeated for the 2016 and 2018 Interzoo shows, with Concord extending its special offer, and Allure renewing space through Concord, with some adjustments of its booth location. As Donnelly recalled, she generally sent the special offers by certified mail, to ensure their receipt by the past customers. Allure was among the clients that were mailed these special offers. If an exhibitor chose to renew, it would send back to Concord a signed copy of the contract and a check for the deposit.

The present dispute arose in connection with the Interzoo show that had been planned for May 2020 in Nuremberg, Germany. As per its custom, after the 2018 show, Concord extended Allure a special offer to renew for 2020.

On April 26, 2019, Donnelly sent Allure an email attaching the special offer for 2020. The special offer specified a 30.24 square meter "island turnkey stand" within the United States Pavilion, plus a catalogue listing and communications package, for a total price of $14,256.80. Donnelly asked

A-0429-23

Allure to respond by emailing back the signed contract within four days and paying a deposit within thirty days.

Allure's representative, Julie Krauss, emailed Donnelly back and requested the tentative floor plan for the 2020 show. In reply, Donnelly emailed Krauss a working diagram of the floor plan but noted she had shared the diagram with a few other companies that also might want to move their booth location.

Four days after receiving Concord's renewal offer for the 2020 show, Krauss emailed Donnelly and advised her that "after much deliberation," Allure agreed to renew the same booth from the 2018 show for 2020. The email noted "[w]e can work on the details later" and that Allure would arrange to pay the deposit, followed by the remaining balance due in December. Donnelly responded with more details and reminded Krauss to send back the contract and deposit in order to "secure the space." The parties thereafter mutually signed the contract, and Allure paid the full balance.

Subsequently, in early 2020, the worldwide COVID-19 pandemic caused the sponsor to cancel the 2020 Interzoo show. The sponsor initially announced it would reschedule the event in 2021. At Concord's suggestion, Allure agreed to take part in the rescheduled show in 2021 under their preexisting contract.

As the pandemic lingered, the sponsor decided to postpone the show

A-0429-23

until 2022. At that point, Allure asked Concord to apply its deposit to the 2022 show. When Concord declined to do so, Allure demanded its money back. Concord was unwilling to refund the money, asserting that Allure bore the risk of the 2020 show's cancellation. It pointed to language within its form contract stating that plaintiff's deposit of the total participation fee was non-refundable.[1]

These events prompted Allure to sue Concord and Donnelly in the Law Division, seeking repayment of the funds it paid and other relief. Defendants moved to dismiss the complaint under Rule 4:6-2,[2] alleging our courts lack personal jurisdiction over them. Defendants also asserted plaintiff's complaint failed to state a claim upon which relief may be granted. The trial court ordered jurisdictional discovery, which the parties completed through the exchange of documents and interrogatory answers, and the remote depositions of Donnelly and Krauss.

One of the key documents supplied by defendants in discovery was a chart Donnelly prepared that shows Concord's interactions with New Jersey

---

[1]  We need not address here the merits of the parties' positions and instead confine our discussion to the jurisdictional issue.

[2]  Although not specified in the motion papers or appellate briefs, the pertinent portion of Rule 4:6-2 for this jurisdictional ground is subsection (b).

customers for the 2012, 2014, 2016, 2018, and 2020 Interzoo shows.[3] Depending on how the numbers are counted, the chart reflects that Concord has done business with ten or more New Jersey customers, including Allure, during that time span, most of them renewing their space every two years. As Donnelly recounted during her deposition and as the chart reflects, some of those New Jersey customers date back to the early 2000s when her father owned the business.

Upon considering the discovery and hearing oral argument, the trial court denied defendants' motion. In his initial written decision, the motion judge concluded the court had specific, but not general, personal jurisdiction over defendants in connection with the contract. The judge observed, in particular, that the complaint alleges a contract involving a New Jersey company. The judge made other rulings bearing upon non-jurisdictional issues not before us.

Defendants moved for reconsideration. The judge again denied their motion. Among other things, the judge made note of plaintiff's argument that the discovery showed defendants "were conducting business with New Jersey-

---

[3] According to Donnelly, some of the records from previous years were lost due to computer problems, so she reconstructed the information and presented it in the composite chart. The chart was the subject of extensive questioning at Donnelly's deposition and has been helpful to our analysis.

based pet products entities over the course of [eight] years."

Defendants moved for leave to appeal, which we granted but "solely with respect to the jurisdictional ruling and the trial court's subsequent denial of reconsideration."

## II.

As we noted at the outset, defendants emphasize that plaintiff is the party that initiated contact with them in 2011, unsolicited, and therefore they did not purposefully avail themselves of business in this state. They further stress that they are located in Utah, have not physically entered New Jersey, and that the trade show in question had been planned to occur abroad in Germany. Defendants also argue that even if minimum contacts and purposeful availment are present, it would be unfair to force them to litigate this case far away in New Jersey.

The general principles of in personam jurisdiction we apply here have been long established. New Jersey courts "may exercise in personam jurisdiction over a non-resident defendant 'consistent with due process of law.'" Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. 420, 428 (App. Div. 2000) (alterations omitted) (quoting R. 4:4-4(b)(1)). Our courts exercise jurisdiction over nonresident defendants "to the uttermost limits permitted by the United States Constitution." Jardim v. Overley, 461 N.J. Super. 367, 377

9

(App. Div. 2019) (quoting Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971)).

A two-part test governs an analysis of personal jurisdiction: (1) defendant must have "minimum contacts" with the forum state; and (2) maintaining the suit in that state cannot offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "[T]he requisite quality and quantum of contacts is dependent on whether general or specific jurisdiction is asserted . . . ." Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 526 (App. Div. 1996).

General jurisdiction "requires affiliations 'so "continuous and systematic" as to render'" a non-resident organizational defendant "'essentially at home in the forum State.'" Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Both parties agree that Concord and Donnelly are not subject to general jurisdiction in New Jersey. Accordingly, as the motion judge correctly recognized, the court must focus here on whether there is specific jurisdiction over those defendants.

Specific jurisdiction depends on the "relationship among the defendant, the forum, and the litigation." Lebel v. Everglades Marina, Inc., 115 N.J. 317,

323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The litigation must "aris[e] out of or relate[] to the defendant's contacts with the forum." Daimler AG, 571 U.S. at 127 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984)).

Unlike the continuous and systematic contact requirements of general jurisdiction, specific jurisdiction requires only "minimum contacts" resulting "from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel, 115 N.J. at 323. A single act can support jurisdiction, so long as the defendant created a "substantial connection" with the forum. Maglio & Kendro, Inc. v. Superior Enerquip Corp., 233 N.J. Super. 388, 396 (App. Div. 1989) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 n.18 (1985)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Lebel, 115 N.J. at 323-24 (quoting Burger King, 471 U.S. at 475).

Upon considering a defendant's contacts, courts analyze "whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway, 333 N.J. Super. at 429 (alteration in original) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)). The analysis is often fact-sensitive. See, e.g., JA/GG Doe 70 v. Diocese of

11

Metuchen, __ N.J. Super. __, __ (App. Div. 2023) (finding purposeful availment where a Virginia diocese retained control over a priest sent to serve in New Jersey despite the Virginia diocese's awareness of priest's sexual propensities towards children); D.T. v. Archdiocese of Philadelphia, __ N.J. Super. __, __ (App. Div. 2023) (finding no such purposeful availment where another archdiocese owned property in New Jersey in the past but had no knowledge of a Pennsylvania priest's transportation of a minor to New Jersey).

Apart from this analysis, due process also requires the extension of jurisdiction be reasonable under the circumstances by comporting with "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987) (quoting Int'l Shoe, 326 U.S. at 316). A court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Ibid. The court must also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." Ibid. (quoting World-Wide Volkswagen, 444 U.S. at 292).

On appeal, we apply these principles based on the record amassed before the motion judge. As a "mixed question of law and fact," Citibank, 290 N.J. Super. at 532, personal jurisdiction entails findings of fact that are reviewed

for "substantial, credible evidence in the record" and legal conclusions that are reviewed de novo, Rippon v. Smigel, 449 N.J. Super. 344, 358 (App. Div. 2017). The trial court's findings of fact concerning jurisdiction must be upheld if they are supported by substantial credible evidence, ibid., although "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Here, because the motion judge did not conduct an evidentiary hearing or make any direct observations of witness credibility—and appellants do not argue the judge was required to conduct such a hearing—we essentially perform a de novo review of the same motion record.

III.

Applying these principles, it is abundantly clear that defendants engaged in the minimum level of contacts with Allure (and with other New Jersey customers) sufficient to support specific jurisdiction in this state. By their repetitive actions in soliciting and re-soliciting Allure to renew trade show business every two years for at least eight years, defendants "purposefully availed" themselves of the benefits of that commercial relationship. Defendants leveraged their role as the apparent exclusive broker of exhibition space in the United States Pavilion. They further promoted that business by

13

extending "special offers" to entice Allure and other returning customers.

We recognize that when purposeful availment is found, the defendant often initiated the very first contact with the plaintiff in the forum state. See, e.g., Avdel, 58 N.J. at 267 (in which the New York defendant "requested one of the [New Jersey] plaintiff's salesmen to come to a job site in New York for a demonstration" and, days later, ordered rivets from defendant by telephone); Maglio, 233 N.J. Super. at 391 (in which a Pennsylvania defendant initially telephoned the New Jersey plaintiff "seeking to engage plaintiff's services to search for a new general manager for defendant's Pennsylvania office"). See also Burger King, 471 U.S. at 467-87 (in which a Michigan defendant applied for a franchise application from a plaintiff company headquartered in Florida, with an apparent intention to create a multi-year relationship with plaintiff); Power Invs., LLC v. SL EC, LLC, 927 F.3d 914, 919 (6th Cir. 2019) (in which a Missouri defendant solicited financing from a Kentucky plaintiff to purchase a power plant in Missouri); Waimberg v. Med. Transp. of Am., Inc., 52 F. Supp. 2d 511, 513-16 (E.D. Pa. 1999) (in which a Nevada defendant faxed an offer letter to a Pennsylvania plaintiff inviting him to become a financial officer of a company in Las Vegas).

However, as this case illustrates, such first contact is not always jurisdictionally dispositive. The 2012 contract between Allure and Concord

was not a "one-off," as that term is used in current parlance. Cf. Jardim, 461 N.J. Super. at 383 (involving a single sale of a used car between strangers, described as a "one-shot affair"). Instead, Concord repeated its efforts over four consecutive trade shows to solicit Allure's renewal business, and to profit from those renewals. The "special offers" Concord extended and promoted were designed to extract more revenue from Allure and other New Jersey exhibitors.

Defendants argue it is improper to consider the other ten or more New Jersey customers depicted on the chart, asserting that those contacts bear only upon general jurisdiction and not specific jurisdiction. We do not adopt such a narrow view of that evidence. The chart substantiates that defendants' repeated biannual interactions were not isolated. Instead, they were consistent with a business pattern and practice of maintaining relationships and a stream of income from such New Jersey clientele.

We are also satisfied that the exercise of personal jurisdiction over defendants in this state will not offend traditional principles of fair play or substantial justice. Defendants knew they were dealing with a repeat customer located in New Jersey. They did not include a forum selection clause in their form contract, which could have required disputes to be litigated in Utah or

15                                                                          A-0429-23

some other designated venue.  See, e.g., Burger King, 471 U.S. at 481 (treating a forum selection clause as pertinent to the Due Process analysis).

We further note this is a non-jury case involving a modest amount of money and a limited number of witnesses.  The initial deposition of Donnelly, who may well be defendants' sole witness, was conducted remotely.  Counsel is free to request that any additional depositions or testimony in a bench trial be similarly conducted remotely, subject to the trial court's discretion.  See Pathri v. Kakarlamath, 462 N.J. Super. 208, 212-21 (App. Div. 2020) (explaining factors that bear upon the trial court's discretion to allow remote testimony).  We discern no unfair burden.

In sum, although we do not adopt the motion judge's express reasoning that hinged upon the complaint's reference to the existence of the contract, we affirm the court's finding of personal jurisdiction over these defendants.  See Isko v. Planning Bd. of Livingston Twp., 51 N.J. 162, 175 (1968) (appellate court may affirm a judgment on different grounds than those identified below).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-0429-23